# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:06mc29

| | |
|---|---|
| INSULATE AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| KNAUF INSULATION GmbH, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court on movant Insulate America's Motion to Quash Subpoena and for Protective Order and Amended Motion to Quash Subpoena and for Protective Order. It appearing that the issues have been fully briefed, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.     The Underlying Actions in the Northern District of Georgia**

This is second time this court has addressed this issue based on a subpoena emanating from this district, *de bene esse* for litigation in the Northern District of Georgia. See Wilson Insulation of Augusta, Inc. v. Masco Corp., 1:03cv580 (N.D. Ga.); c.f. Insulate America v. Masco Corp., 227 F.R.D. 427 (W.D.N.C. 2005).

This time, the underlying action in the Northern District of Georgia is captioned Columbus Drywall & Insulation, Inc. v. Masco Corp., 1:04cv3066-JEC. As before, Insulate America is not a party to that action. Plaintiff herein represents that Columbus has been linked with Wilson for purposes of discovery coordination. Plaintiff's Reply (#6), at 1. Defendant herein argues that the information it seeks from Insulate is relevant to the Georgia action because Insulate "plays a significant role in determining the net price of fiberglass

insulation for its members." Knauf's Response, at 2-3. Insulate argues in response that it plays no role in setting net price of insulation for its members, and that it is merely the beneficiary of certain rebates and customer loyalty rewards that are provided by insulation and other product manufacturers to its members, and that such funds are used by Insulate to fund educational programs and other operations, with any remainder distributed to its members with no distinction being made between insulation rebates and non-insulation product rebates. Reply, at 2. Insulate has further averred that it has no information as to which rebates are attributable to each of its members inasmuch as the rebates for insulation are commingled with rebates from other products. Id. This is precisely what Insulate maintained in the earlier action before the this court.

Not unlike the Wilson action, plaintiffs in Columbus are attempting to bring a class action on behalf of all insulation contractors who purchase residential fiberglass insulation products directly from a manufacturer. Columbus, Second Amended Complaint, at ¶ 1. It is the plaintiffs' contention in those actions that the manufacturers, along with Masco, have engaged in a conspiracy to fix prices that plaintiffs pay for insulation at a set percentage above the price that Masco pays. Id., at ¶ 26. It is also the plaintiffs' contention in those actions that as a result of the alleged conspiracy, they are required to pay a higher price for insulation than they would in a competitive market. Id., at 29. Such claims are asserted to be violations of the Sherman Act. Unlike the Wilson action, which sought to remedy the alleged unlawful conduct in the Augusta-Atlanta Georgia area, the Columbus action alleges a nationwide class action suit. Apparently, the district court has determined that the Columbus action is a superior and preferable form, and has consolidated the actions. Knauf is a defendant-manufacturer in the Columbus action, while Insulate and its members are potential class members. From the pleadings now before the court, it would appear that

neither Insulate nor its members wish to be joined as class members.

**II.    The Subpoena**

On April 25, 2006 the attorneys for Knauf issued a subpoena requiring the production of a large list of documents by Insulate and further requiring that Insulate appear for the taking of a deposition regarding those documents. The subpoena and the deposition topics cover "virtually every document and every aspect of information concerning Insulate's business from prior to Insulate's formation to the present time." Affidavit of David Beam, ¶ 21(a). As is set forth above, this court has previously addressed a subpoena issued in the related case of <u>Wilson Insulation of Augusta, Inc. V. Masco Corp.</u>, 1:03cv580.

A comparison of the subpoena served upon Insulate in the <u>Wilson</u> action with the subpoena served upon Insulate in this case shows striking similarities. Indeed, the documents requested in the subpoena dated April 25, 2006 in this action and the subpoena in the <u>Wilson</u> action demand the production of exactly the same documents, with just the language of the second subpoena being changed in very few respects.

Listed in column "A" below entitled, "Subpoena of April 25, 2006," are the 15 document requests in that subpoena. In column "B" is the corresponding demand for production of documents from the subpoena issued in the <u>Wilson</u> action. While not word-for-word, the requests for production of documents in the respective subpoenas are analogues.

| A<br>Subpoena of April 25, 2006 | B<br>Subpoena Issued in Wilson Action |
|---|---|
| No. 1 | No. 1 |
| No. 2 | No. 2, 23 |
| No. 3 | No. 3 |
| No. 4 | No. 4 |
| No. 5 | No. 6 |

| | |
|---|---|
| No. 6 | No. 7 |
| No. 7 | No. 5 |
| No. 8 | No. 10, 14 |
| No. 9 | No. 13 |
| No. 10 | No. 4, 12 |
| No. 11 | No. 12, 13 |
| No. 12 | No. 21, 22 |
| No. 13 | No. 25 |
| No. 14 (Documents as to Delmarva Insulation of Georgetown, DE, Devere Insulation of Baltimore, MD & Whitson Insulation of Grand Rapids, MI were not requested in <u>Wilson</u> subpoena) | No. 19, 16, 20, 28, 29, 30 |
| No. 15 | No. 32, 33, 34 |

The actual requests can be read in this court's Order in <u>Wilson</u>.

In comparing the subpoenas, this court was reminded of the phrase ascribed to Yogi Berra, perennial all-star and hall of fame catcher for the New York Yankees in which Mr. Berra is alleged to have said, "it's *deja vu* all over again." In the <u>Wilson</u> action the subpoena was, in large part, quashed and Insulate was ordered to produce the items subpoenaed listed as items 15, 25, and 31; items 32, 33 and 34 were modified by the court and Insulate was required to respond to those specific subpoena request for documents. Insulate responded in the previous action as ordered by the court. Knauf has the benefit of that production by Insulate due to the orders of the District Court in the Georgia actions.

In the affidavit of David Beam, president of Insulate, Mr. Beam describes the subpoena and the information requested as follows:

> The subpoena issued by defendant Knauf, like the previous subpoenas issued upon Insulate by Masco, seeks highly confidential information of Insulate and its member in the forms of requested documents and deposition testimony. In particular, defendant seeks documents that would disclose information that Insulate considers highly confidential commercial and proprietary information, including the identity of Insulate members, the application process for

> membership with Insulate, manufacturer rebate information, and Insulates' financial information. Insulate maintains strict confidentiality concerning this and other information regarding its business and its members and does not disclose this information to the public or even to other members.
>
> The business of insulation contracting is extremely competitive. The disclosure of any of these categories of information to the *Columbus* action or *Wilson* action defendants or plaintiffs (who, in the case of defendants, are either insulation manufacturers or competitors of Insulate's members or, who, in the case of the plaintiffs, are competitors of Insulate's members that belong to the National Insulation Contractors' Exchange, a group that competes with Insulate) would competitively harm Insulate and/or its member and would result in irreparable damage to Insulate and/or its members.
>
> If such information were disclosed to the parties in the *Columbus* action or the *Wilson* action, or the public in general, Insulate's business would be severely and irreparably damaged. Indeed, all parties in both the *Columbus* and *Wilson* actions could use Insulate's confidential information in an effort to cause Insulate or its members to cease business operations. Further, as competitors of Insulate and its members or as competing insulation manufacturers who seek a competitive edge with its Insulate member customers, the parties in the *Columbus* and *Wilson* actions are likely to use any information produced by Insulate to their economic advantage. In light of the fact that I do not see any relevance of Insulate's confidential business records and information to the *Columbus* action, I can only surmise that the purpose of this request - coming on the heels of the Court's order quashing the Prior Subpoenas - is for some improper business purpose. As stated above, this would severely and irreparably disadvantage Insulate and its members' competitive standing.
>
> Additionally, the *Columbus* and *Wilson* actions plaintiffs are all members of NICE, a competitor of Insulate; Insulate has not conducted any business with the *Columbus* or *Wilson* action plaintiffs and does not have any documentation regarding these plaintiffs. Insulate also does not directly or indirectly transact any business with Knauf or with Service Partners, a Masco owned corporation and distributor that sells Knauf products. Further, the documents and deposition testimony sought from Insulate regarding any transactions or communications between Insulate and insulation manufacturers can be obtained from the defendant *Columbus* manufacturers themselves, rather than from Insulate. Finally, Insulate does not possess documentation of its members' actual pricing from manufacturers and therefore such documentation would need to be sought directly from individual insulation contractors or by the *Columbus* defendant manufacturers themselves.

Affidavit of David Beam, ¶ ¶ 14, 16, 17, 20. It appears that the subpoena requires the disclosure of "other confidential research, development or commercial information" as described and set forth in Fed. R. Civ. 45(c)(3)(B)(i).

## III. Discussion

As to disclosure of confidential information by a non-party, Federal Rule of Civil Procedure 45(c)(3)(B)(i) provides as follows:

> If a subpoena requires disclosure of a trade secret or other confidential research, development or commercial information, ...the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise net without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions. Fed. R. Civ. 45(c)(3)(B)(i).

In the context of subpoenas issued to non-parties and the entry of protective orders, the Court of Appeals for the Fourth Circuit has held, as follows:

> We begin by setting forth the pertinent legal standards under which the protective order should be reviewed. First, the district court is subject to the broad admonitions of Fed.R.Civ.P. 26(b) in fashioning discovery orders. All non-privileged information that is either admissible at trial or that "appears reasonably calculated to lead to the discovery of admissible evidence" should be discoverable. Fed.R.Civ.P. 26(b)(1). However, protection may be granted to any person from whom discovery is sought to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).

Watson v. Lowcountry Red Cross, 974 F.2d 482, 485 (4th Cir. 1992). As stated previously by this court in regard to the Wilson subpoenas:

> A non-party such as Insulate, may seek from the court protection from discovery by the overlapping and interrelated provisions of Rules 26 and 45 of the Federal Rules of Civil Procedure. A non-party moving to quash a subpoena is in the same position as a party moving for a protective order that such discovery not be allowed. The court hearing the motion is required to apply the balancing standards: relevance, need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. Mannington Mils, Inc. V Armstrong World Industries, Inc., 206 F.R.D. 525 (D.Del.2002); Micro Motion, Incorporated v Kane Steel Co., Inc., 894 F.2d 1318, 1323 (Fed.Cir.1990). In addition, other factors to be considered in the balancing test are set forth in Anker v G.D. Searle & Co., 126 F.R.D. 515 (M.D.N.C.1989), which are of particular interest when the party subpoenaed to produce documents is a non-party. Anker, at 519 and 522."

Insulate America v Masco Corp., 227 F.R.D. 427 (W.D.N.C. 2005).

The court will not restate the respective arguments of counsel, but will instead focus on the central issue, which is the scope of permissible discovery.

> In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, fn. 17 (1978). While discovery in anti-trust litigation is not limited to the four corners of the complaint, Maritime Cinema Service Corp. v. Movies en Route, Inc., 60 F.R.D. 587, 589 (S.D.N.Y. 1973), the discovery sought must have some nexus to the litigation at hand as provided in Oppenheimer.

The Second Amended Complaint in Columbus is certainly broader than the Second Amended Complaint in Wilson in that it seeks redress for alleged violations of the Sherman Act nationwide. Such action is, however, just as narrow as Wilson in some regards in that it relates only to the residential insulation market. Columbus, Second Amended Complaint, at ¶ 1.

As the Rules provide, all non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence" should be discoverable. Fed.R.Civ.P. 26. In this matter, the bounds of discovery are limited by the issues joined in Columbus. Thus, any non-privileged information that Insulate may have that could reasonably lead to discovery of admissible evidence in Columbus is fair game.

From examining all of the briefs of the parties in this matter, it appears the central issue is Knauf's contention that Mr. Beam misled this court in his affidavits regarding the activities of Insulate. In Wilson, Insulate, through Mr. Beam, averred that it is not a buying group, does not participate in the negotiations of its members' purchase prices, and does not

participate in the purchase of insulation materials from manufacturers. Wilson, Supplemental Affidavit of David Beam, at ¶ 3. Further, in Wilson, Insulate stated that it does not possess any information regarding insulation pricing. Id.; Wilson, Affidavit of Beam, at ¶ 12. Insulate has made nearly identical averments herein. See Affidavit of Beam, Docket Entry 1, Attachment 3, at ¶ 8.

Knauf contends that Mr. Beam's affidavit is "misleading," to which Insulate and Mr. Beam have taken exception. Defendant's Response, at 3. Knauf takes issue with Mr. Beam's contention that Insulate's records "do not contain any information with respect to the pricing of insulation." Id. (Quoting Beam Aff., at ¶ 8). Knauf contends that Mr. Beam fails to mention that Insulate negotiates significant rebates from manufacturers based on each member's volume of purchases and then provides such rebates to its members. Id. In reply, Insulate argues that it does not negotiate rebates with manufacturers, but instead that

> Knauf's statements appear to be based on a gross misunderstanding of Insulate's purpose and function. Knauf apparently believes that that Insulate is like N.I.C.E., a buying group of which the plaintiffs in the Columbus Drywall action are members. Unlike N.I.C.E., Insulate is not a buying group. Insulate is a cooperative association that is centered on providing educational, safety and marketing programs (the "Programs") to its members.
> * * *
> Insulate obtains a set amount of refund, or rebate, from insulation manufacturers, which does not change based on the amount of insulation purchased by its individual members. In other words, Insulate does not have agreements with insulation manufacturers providing for rebates based upon tiered purchases. The percentage of a rebate or rate does not increase with the volume purchased. A member is entitled to the same set manufacturer rebate whether it purchases $100 of insulation or $100,000 of insulation, and such set amount, once received by Insulate, is deposited in Insulate's account, aggregated with other monies and then used to offset the cost of the Programs and to set reserves.
> * * *
> In conclusion, even if manufacturer rebate information were somehow relevant, Insulate cannot break out from its records any amount of rebate received from insulation manufacturers that might remain after paying for Insulate's Programs and other costs let alone the amount, if any, refunded to its members.

Supplemental Affidavit of David Beam, Docket Entry 7, at ¶¶ 5, 9, &11.

In defending an anti-trust action in which it is contended that defendants, such as Knauf, conspired to fix prices, this court can certainly see how a purchaser's net price - - the real price it paid - - would be relevant to a manufacturer's defense that insulation continues to be sold in a competitive marketplace. The court can also see that the real price a purchaser pays for insulation is impacted by any rebates such purchaser receives from the manufacturer. Apparently, members of the Insulate cooperative have assigned their rights to receive these and other rebates to Insulate; Insulate commingles these funds and uses them for the benefit of the cooperative; and Insulate pays out the remainder, if any, to its members.

Inasmuch as Mr. Beam makes no mention as to whether the amounts Insulate pays out to its members are memorialized, the court will assume that it does track actual payouts. Even with that assumption, the court cannot see how such records would be relevant inasmuch as Mr. Beam has averred that there is no correlation between what is paid out, if anything, and the amount of insulation purchased by various members. Put another way, Knauf is attempting to determine how many chickens the fox ate by analyzing its scat.

Given the facts on the ground, Knauf has failed to explain to the court how it would or could forensically reconstruct the actual price of insulation from the information sought, and has not, therefore, shown that it is "relevant information." Fed.R.Civ.P. 26(b)(1). If the averments submitted by Knauf are accurate, including the affidavit of Mr. Brown at Certain Teed, the logical method for discovering how much any purchaser actually paid would be to go to the manufacturer and ask them. This would appear to be a simple task, and would not compromise the trade secrets of a non-party, inasmuch as Insulate contends that defendants in such action comprise most manufacturers of insulation. The needed discovery, in theory, would be readily available through the manufacturer defendants conducting cross-discovery within the litigation. Continuing with the analogy started above, it would appear that Knauf could determine the number of chickens the fox ate by checking its own henhouse and asking

its fellow farmers.

Finally, this court takes allegations of perjury quite seriously and has at times recommended that civil cases be reviewed by the United States Attorney for possible criminal action. Equally, the court does not tolerate the indiscriminate practice of accusing others of misdeeds. The court has closely reviewed Mr. Beams affidavits and can find absolutely no *indicia* that he has been anything other than truthful with this court. Instead, it would appear that Insulate operates under a different business model than N.I.C.E., and is an educational cooperative rather than a buying club - - if Knauf has a smoking gun showing that Insulate is not what it portends to be, it has not made such a showing.

## IV. Conclusion

Looking at the factors of confidentiality and potential harm that could occur as a result of the production of the information subpoenaed by Knauf, it appears that the information Insulate has concerning the identity of its members is confidential commercial information, the disclosure of which could undermine Insulate's function. From the affidavit of Mr. Beam, it appears that the plaintiffs in the Columbus case are members of an organization which is a competitor of Insulate. The courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor. Coca-Cola Bottling Co. V Coca-Cola Co., 107 F.R.D. 288 (D.Del. 1985). More importantly, it appears that the information sought as to the net pricing of insulation is simply not possessed by Insulate, and that if it were required to attempt to produce the information, it would be putting at risk confidential information concerning its members with no furtherance of discovery in the Georgia action.

It appears that the burden or expense of the proposed production outweighs its likely benefit and that the proponent of the subpoena, that being Knauf, has had ample opportunity to obtain the information it seeks from other sources, that being parties to the action who are more likely to have information concerning net pricing of insulation to their customers.

After weighing and considering the factors of relevance, need, confidentiality and harm and whether compliance is unduly burdensome and whether the potential harm caused by production out weighs the benefit, the undersigned has determined to grant the motion of Insulate to quash the subpoena in its entirety. Insulate will be relieved in all respects from any obligation to answer the subpoena or to appear for the taking of any deposition.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the movant Insulate America's Motion to Quash Subpoena and for Protective Order is **GRANTED** and an order is hereby entered that the discovery sought by the subpoena shall not be obtained.

Signed: August 17, 2006

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge